# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV187-H

| | |
|---|---|
| **CARAUSTAR INDUSTRIES, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| **NORTH GEORGIA CONVERTING, INC.,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion to Compel ..." (document #27) and "Memorandum in Support ..." (document #28), both filed November 8, 2005; and the Plaintiff's "Response ..." (document #29) filed November 28, 2005. On December 7, 2005, the Defendant filed its "Reply in Support of ... Motion to Compel ..." (document #30).

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and the Defendant's Motion is now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>grant in part</u> and <u>deny in part</u> the Defendant's Motion to Compel, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is a patent infringement action seeking damages and equitable relief. The Plaintiff, Caraustar Industries, Inc., a North Carolina corporation, is the owner of a patent for a "Winding Core Having Integral Entangling Mechanism" ("the '641 patent"), and has accused Defendant North

Georgia Converting, Inc., a Georgia corporation, of manufacturing a winding core that infringes that patent. According to the '641 patent, the winding core is useful for winding and storing a nonwoven web or other fabric material, that is, the entangling mechanism on the core ensnares an end of the nonwoven web and holds it in place on the winding core during the initial winding of the web around the core.

Relevant to the subject Motion to Compel, the Plaintiff alleges that the '641 patent was owned initially by Kimberly Clark Corporation, which at some point assigned the patent to Jefferson Smurfit, Inc; and that Plaintiff acquired the '641 patent when "[sometime] in 2002, [Plaintiff] purchased Jefferson Smurfit's industrial packaging operations, the section of Jefferson Smurfit that had originally acquired the '641 patent from Kimberly Clark." Document #29 at 8.

On November 8, 2004, the Defendant served its "First Sets of Interrogatories and Requests for Production of Documents."

On January 19, 2005, the Plaintiff served its responses, but did not respond fully to some of the requests, discussed below, and also produced a privilege log, claiming that certain documents are subject to the attorney-client privilege.

Thereafter, counsel conferred several times but were unable to resolve all of the disputed items.

On October 19, 2005, defense counsel wrote Plaintiff's counsel that if the Plaintiff did not serve complete supplemental responses regarding the remaining items in dispute on or before October 26, 2005, then Defendant would file a Motion to Compel.

On November 8, 2005, and having heard nothing further from the Plaintiff, the Defendant filed its Motion to Compel supplemental responses to Interrogatories No. 1, 2, 6 and 7, and Requests to Produce No. 11, 43 and 44; and production of all documents listed on the privilege log that are

1

correspondence or other communication between Kimberly Clark or Jefferson Smurfit and their respective attorneys.

In its Response, the Plaintiff agreed to make complete supplemental responses to Interrogatories No. 1, 2, 6 and 7, and Requests to Produce No. 11, 43 and 44; and to produce <u>some</u> of the documents listed on its privilege log, that is, correspondence between Kimberly Clark and Jefferson Smurfit or between Kimberly Clark and its attorneys, but contended that the Plaintiff is entitled to assert attorney-client privilege as to correspondence between Jefferson Smurfit and its counsel.

In its Reply, the Defendant agrees that the Plaintiff has now made complete production as to Interrogatory No. 7, and Requests to Produce No. 11, 43 and 44, but that Defendant has not yet responded to Interrogatories No. 1 and 2, that Defendant's supplemented response to Interrogatory No. 6 is still insufficient, and that the Defendant should be required to produce both the Kimberly Clark and the Jefferson Smurfit correspondence.

Defendant's Interrogatory No. 6, which the Plaintiff concedes in its Response that it must answer completely, asks the Plaintiff to produce a "claim chart" that provides an element by element explanation of how Plaintiff contends the '641 patent is infringed by the Defendant's product. As the Defendant points out in its briefs, a claim chart is a conventional means for setting out an infringement analysis (in which the elements of a patent claim are set forth in one column and the corresponding, allegedly infringing elements of the accused device are stated in an adjacent column) and is a standard discovery request in patent infringement cases. <u>Accord</u> <u>Carver v. Velodyne Acoustics</u>, 202 F.R.D. 273, 274 (W.D. Wash. 2001) (granting defendant's motion to compel plaintiff patentee to produce claim chart, holding defendant "is entitled to know what led the [plaintiffs] to file their patent infringement suit"); <u>and</u> <u>Excrix Corporation v. Exabyte Corporation</u>, 95 F.Supp.2d

1155,1157, n. 2 (D. Col. 2000) ("claim charts are industry standard documents for infringement analysis in which the elements of a patent claim are set forth in one column, and corresponding elements of the accused device are juxtaposed in the next column").

In its Reply, the Defendant states that the claim chart that the Plaintiff has now produced is incomplete, that is, it "does not state what features on [Defendant's] product allegedly correspond to the limitations of the '641 patent." Document #30 at 2.

The Defendant's motion has been fully briefed and is, therefore, ripe for determination.

## II. <u>DISCUSSION</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. <u>See</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979); <u>and</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. <u>See</u> Fed. R. Civ. P. 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad discretion. <u>See, e.g.</u>, <u>Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.</u>, 43 F.3d 922, 929 (4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); <u>Erdmann v. Preferred Research Inc.</u>, 852 F.2d 788, 792 (4th Cir. 1988) (noting district

court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).  However, regarding cases such as this, where attorney-client privilege is raised in objection to a discovery request, the Fourth Circuit has stated that "[w]e review the district court's decision that certain documents are subject to privilege de novo, since it involves a mixed question of law and fact." Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir.1999).  Accord In re Grand Jury Proceedings, 33 F.3d 342, 353 (4th Cir. 1994).

The attorney-client privilege is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and is one of the oldest recognized privileges for confidential communications. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); and Hunt v. Blackburn, 128 U.S. 464, 470 (1888). The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice." Upjohn, 449 U.S. at 389. Accord Swidler & Berlin v. U.S., 524 U.S. 399, 404 (1998).

When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. However, since it impedes the full and free discovery of the truth, the attorney-client privilege is narrowly construed. See Trammel v. United States, 445 U.S. 40, 50 (1980);  In re: Grand Jury Subpoena, 341 F.3d 331, 335 (4th Cir. 2003) (attorney-client privilege "must be narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth");  In re Grand Jury Subpoena, 204 F.3d 516, 519-20 (4th Cir. 2000); and Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998).

The party asserting the attorney-client privilege has the burden of persuasion as to each element of the privilege. Accord In re: Grand Jury Subpoena, 341 F.3d at 335; and Santrade, Ltd. v. General Electric Company, 150 F.R.D. 539, 542 (E.D. N.C. 1993).

The Plaintiff has not cited any Fourth Circuit or other published authority, and the undersigned is aware of none, holding that when a business purchases or otherwise acquires an asset, that confidential communications concerning that asset between the seller and its counsel remain privileged in the buyer's hands. To the contrary, courts considering the question have concluded that the transfer of assets, including the assignment of a patent, does not transfer the attorney-client privilege from assignor to assignee. See, e.g., Telectronics Proprietary, Ltd. v. Medtronic, Inc., 836 F.2d 1332, 1336 (Fed. Cir. 1988) ("the assignment of a patent does not transfer an attorney-client relationship"); In re Yarn Processing Patent Validity Litigation, 530 F.2d 83, 90 (5th Cir. 1976) ("Assignment of the patent does not assign [the assignor's] attorney along with it. The relationship between an attorney and his client is personal"); and FDIC v. McAtee, 124 F.R.D. 662, 664 (D. Kan. 1988) ("[t]he transfer of assets from one entity to another does not generally transfer the attorney-client privilege").

Applying these legal principles to the facts in this case, the undersigned concludes that the Plaintiff must make full production of the remaining disputed items. At the outset, as the Plaintiff has agreed in its brief, the Defendant is entitled to complete responses to its Interrogatories No. 1, 2 and 6, including concerning the later, a claim chart that states with specificity what features on Defendant's product allegedly correspond to the limitations of and infringe the '641 patent. Accord Carver, 202 F.R.D. at 274; and Excrix Corporation, 95 F.Supp.2d at 1157, n. 2.

Similarly, to the extent that responsive documents are in the Plaintiff's possession, custody

5

or control, they must be produced even if they were initially confidential communications between third parties Kimberly Clark, Jefferson Smurfit, and/or their respective counsel.  See Telectronics Proprietary, Ltd., 836 F.2d at 1336; In re Yarn Processing Patent Validity Litigation, 530 F.2d at 90; and McAtee, 124 F.R.D. at 664.

### III.  ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1.  The "Defendant's Motion to Compel"  (document #27) is **GRANTED IN PART** and **DENIED IN PART**, that is, on or before January 19, 2006, the Plaintiff shall make complete supplemental responses to the Defendant's Interrogatories No. 1, 2 and 6, and will further identify and produce all documents in the Plaintiff's possession, custody or control responsive to the Defendant's First Sets of Interrogatories and Requests for Production of Documents without regard for whether those documents were initially confidential communications between third parties Kimberly Clark Corporation, Jefferson Smurfit Inc. and/or their respective counsel, and the Defendant's Motion is **DENIED** in all other respects.

2.  The discovery deadline is extended until February 28, 2006, and the dispositive motions deadline is extended until March 31, 2006.

3.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

**Signed: December 8, 2005**

*Carl Horn, III*

Carl Horn, III
United States Magistrate Judge