# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL NO. 3:04CV187-H

| | |
|---|---|
| CARAUSTAR INDUSTRIES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **MEMORANDUM AND ORDER** |
| ) | |
| NORTH GEORGIA CONVERTING, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on the parties' cross-Motions for Summary Judgment (document #47 for Defendant, document #64 for Plaintiff) filed, respectively, June 30 and October 2, 2006, and the associated briefs and exhibits.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and these Motions are now ripe for determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will <u>deny</u> the Plaintiff's Motion for Summary Judgment, and <u>grant</u> the Defendant's Motion for Summary Judgment and <u>dismiss</u> the Complaint, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

This is a patent infringement action seeking damages and equitable relief. The Plaintiff, Caraustar Industries, Inc., a North Carolina corporation, is the owner of a patent for a "Winding Core Having Integral Entangling Mechanism" ("the winding core") that is useful for winding and storing fabric. In layman's terms, the winding core is wrapped with a single layer of cardboard or

paper that has been embossed or perforated such that the perforations amount to an "entangling mechanism," as that term is defined in the patent documents described below, that ensnares an end of the fabric and holds it in place on the winding core.

On June 3, 1997, Kimberly Clark Corporation filed its patent application which was subsequently granted. Sometime later, Kimberly Clark assigned the patent to Jefferson Smurfit, Inc. Sometime in 2002, the Plaintiff acquired the patent when it purchased Jefferson Smurfit's industrial packaging operations, the section of Jefferson Smurfit that had acquired the patent from Kimberly Clark.

As the parties agree, the patent includes three independent claims – claims 1, 11 and 22 – which read as follows:

> 1. A combination including a winding core and a fibrous web in the form of a roll, the winding core comprising:
> a main body; and
> an entanglement mechanism on an outer surface of the main body;
> the entanglement mechanism being capable of mechanically engaging and holding the web against the core in a peelably releasable fashion;
> the entanglement mechanism located in a region which substantially covers the outer surface of the main body.
>
> 11. A combination including a winding core and a fibrous web on the winding core in the form of a roll, the winding core comprises:
> a main cylindrical body; and
> a plurality of prickly protuberances disposed in the main cylindrical body;
> the prickly protuberances located in a region which substantially covers an outer surface of the main cylindrical body.
>
> 22. A combination of a winding core and a fibrous web, comprising:
> a winding core having a main cylindrical body and a mechanical entangling mechanism disposed in an outer surface of the body; and
> a fibrous web wrapped around the winding core;
> the mechanical entanglement mechanism substantially covering the outer surface of the body.

The specification of the patent explicitly provides a special definition for the term "entanglement mechanism" contained in claims 1 and 22, which, as discussed below, applies to claim 11 as well:

> **To qualify as an entanglement mechanism, the following test must be passed**. A nonwoven web sample of the type being wound is pressed against the outer surface of the core. The web sample is then lifted off of the core. If the web exhibits any noticeable mechanical peeling (i.e., a tendency to mechanically stick to the core) while it is being lifted off, the surface feature causing the peeling qualifies as an entanglement mechanism. **If the web exhibits no such peeling, but instead lifts off of the core without any resistance, the core surface does not embody an entanglement mechanism.** To qualify as an entanglement mechanism, the level of peeling or resistance may be very low and can be barely noticeable. A low level of mechanical resistance is all that is required to maintain the nonwoven web on the core during initial winding of the roll.

Exhibit 1 to Defendant's "Memorandum in Support," column 2, lines 49-58 (document #48) (emphasis added).

The Plaintiff expressly concedes that this definition must be met for all three claims, that is, "to qualify as an entanglement mechanism [claims 1 and 22] or prickly protuberances [claim 11], the mechanism must perform as outlined above [in the patent's definition of entanglement mechanism]." Plaintiff's "Memorandum in Opposition ..." at 17 (document #51).

The Defendant, North Georgia Converting, Inc., is a closely-held Georgia corporation which manufactures and sells, among other things, winding cores. Since 1998, Vernon Mintz has been the Defendant's sole shareholder and President. Accepting Mr. Mintz's deposition testimony as true, the Defendant makes types of winding cores that have a completely smooth outer surface, and other winding cores that have a non-smooth outer surface, referred to in this litigation as "knobby cores."

On April 20, 2004, the Plaintiff filed its Complaint alleging that the Defendant was "contributing to" and "inducing" the infringement of the patent by selling its "knobby" winding core

that when used by the buyer to wind fabric would infringe the patent.

On July 22, 2004, the Defendant filed its Answer, which, as amended, includes a single Counterclaim seeking a declaratory judgment that the patent "is invalid, unenforceable, and not infringed." In its principal brief, however, the Defendant expressly states that the portions of its Counterclaim seeking to invalidate the patent or have it declared unenforceable are offered only in the alternative and only upon a finding that the Defendant otherwise infringed the patent. <u>See</u> Defendant's "Memorandum in Support," at 1, 20 and 32 (document #48).

On October 13, 2004, and after conducting the Initial Pretrial Conference in chambers, the undersigned issued the Pretrial Order and Case Management Plan which set the initial discovery and dispositive motions deadlines for May 30 and June 30, 2005, respectively. Those deadlines were subsequently extended several times (with the consent of both parties), to February 28, 2006 for discovery and September 30, 2006 for dispositive motions.

Although certainly not the most contentious the undersigned has ever seen, the discovery period in this case was characterized by an unusual number of disputes between the parties and their respective counsel that required the Court's intervention. For a complete discussion of those disputes, <u>see</u> "Memorandum and Order" (document #25) entered September 9, 2005 (<u>granting in part</u> and <u>denying in part</u> Defendant's "Motion for Protective Order" (document #19), limiting discovery to "knobby" cores, rather than smooth cores as well, and prohibiting Plaintiff from inquiring into the

Defendant's Rule 30(b)(6) witnesses' or their counsel's legal conclusions)[1]; "Memorandum and Order" (document #31) entered December 8, 2005 (<u>granting in part</u> and <u>denying in part</u> Defendant's "Motion to Compel" (document #27), requiring Plaintiff to produce claim chart and other documents that Plaintiff claimed were subject to attorney-client privilege)[2]; <u>and</u> "Memorandum and Order" (document #39) entered March 22, 2006 (<u>denying</u> Defendant's "Motion for Protective Order" (document #35), permitting Plaintiff to depose Mr. Mintz in his individual capacity even though previously he had been deposed under Rule 30(b)(6)).

Relevant to the subject motions for summary judgment, on December 14, 2005, the Plaintiff took the Rule 30(b)(6) deposition of SKAPS Industries ("SKAPS"), which is one of the Defendant's primary customers of its "knobby cores," that is, the sales that the Defendant has made to SKAPS formed in part the initial basis for the Plaintiff's contention that the Defendant has been inducing infringement and committing contributory infringement of the patent.

SKAPS President Perry Vyas and Umesh Patel, general manager of operations, testified on behalf of SKAPS. In response to questioning from Plaintiff's counsel, Mr. Vyas testified that the Defendant's "knobby cores" had "raised surfaces" that "grab[bed]" the fabric and "helped hold" it

---

[1] Fed. R. Civ. P. 30(b)(6) provides:

A party may in the party's notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision (b)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

[2] The Defendant's Motion to Compel was <u>denied</u> only to the extent that by the time the Motion was ripe for determination, the Plaintiff had produced some of the subject documents.

5

on the core. Concerning the above-quoted test for qualifying as an "entanglement mechanism," however, Mr. Vyas testified as follows:

> Q: Did you see the fabric unwound from a North Georgia winding core all the way to the end where it was being taken off?
> A: Yes.
>
> Q: Did the fabric stick to the winding core at the end?
> A: No. No. It just comes off, because the unwinding machine I have seen, so, you know, no effect at all. It just unwound.

Similarly, Mr. Patel, also in response to questioning from Plaintiff's counsel, acknowledged that the Defendant's winding core was covered with "raised dots," but concerning the entanglement mechanism test, which he had witnessed but not personally performed, testified as follows:

> Q: Have you ever seen the fabric being taken off all the way to the end?
> A: Yes.
>
> Q: Can you briefly describe what happens at the end when you are pulling the fabric off?
> A: It just comes off the core.
>
> Q: Does it come off cleanly or does it stick?
> A: It comes off clean.

The same day, December 14, 2005, the Plaintiff deposed Rob Ryland, an employee of one of the Defendant's other customers, Ten Cate Nicolon, who testified in relevant part that the surfaces of the Defendant's "knobby" cores were "nonsmooth" and had "bumps" on them. Mr. Ryland apparently was not questioned, however, concerning the specific requirements of the entanglement mechanism test, that is, that upon unwinding, the fabric must exhibit at least some minimal resistance to detaching from the winding core.

On February 1, 2006, the Plaintiff took the deposition of Mark Evans, an employee of yet another of the Defendant's customers, Dalco Nonwovens, LLC ("Dalco"). Mr. Evans testified that

although the winding cores Dalco had purchased from the Defendant had "rough surface[s]," the same surfaces were not "prickly" or covered with "raised surfaces." As with Mr. Ryland, Mr. Evans was not questioned about the entanglement mechanism test.

On February 17, 2006, the Defendant served its notice of the Plaintiff's Rule 30(b)(6) deposition, which included the following designated topics:

> 9. The factual basis for Caraustar Industries, Inc.'s contention that North Georgia Converting, Inc. has committed contributory infringement of U.S. Patent No. 5,857,641.
>
> 10. The factual basis for Caraustar Industries, Inc.'s contention that North Georgia Converting, Inc. has induced infringement of U.S. Patent No. 5,857,641.
>
> 11. All tests, experiments and/or studies conducted by Caraustar Industries, Inc. involving North Georgia Converting' winding cores.

On February 27, 2006, the Defendant served its responses to the Plaintiff's second set of interrogatories. Interrogatory No. 21 asked the Defendant to identify "the bases for North Georgia's contention that North Georgia's winding core does not include an entanglement mechanism that substantially covers the core within the meaning of the ... patent." The Defendant's response included the following:

> North Georgia's winding core does not include an entanglement mechanism as defined in the '641 patent. The '641 patent states that to qualify as an entanglement mechanism, the following test must be passed. A nonwoven web sample of the type being wound is pressed against the outer surface of the core. The web sample is then lifted off of the core. If the web exhibits any noticeable peeling (i.e., a tendency to mechanically stick to the core) while it is being lifted off, the surface feature causing the peeling qualifies as an entanglement mechanism. The North Georgia winding core does not meet this test, and therefore does not include an entanglement mechanism. The material that is wrapped on the North Georgia winding core comes off cleanly with no sticking to the core, as testified by Umesh Patel, general manager of operations at SKAPS.

On May 16, 2006, the Defendant took the Plaintiff's Rule 30(b)(6) deposition.[3] The Plaintiff's Vice President Craig Rollins testified as the Plaintiff's designee on all noticed topics, including "all tests, experiments and/or studies conducted by Caraustar Industries, Inc. involving North Georgia Converting's winding cores." After being shown a sample of the accused "knobby" core, Mr. Rollins testified as follows under questioning from defense counsel:

> Q: And does it have an entanglement mechanism on the outer surface of the main body?
> A: Yes, it appears to.
>
> Q: What is the entanglement mechanism?
> A: Prickly protrusions here (indicating).
>
> Q: Do you believe those prickly protrusions are capable of mechanically engaging in [sic] holding a fibrous web against the core in a peelably releasable fashion?
> A: I can't answer that. You would have to try it on the web.
>
> Q: Has Caraustar conducted any testing on any North Georgia Converting cores?
> A: No.
>
> Q: It has never conducted any testing of any kind on any North Georgia Converting core?
> A: Not that I know of.
>
> Q: I'm handing you again Exhibit No. 4 [the above-quoted definition of "entanglement mechanism"]. I'd like for you to look down on Column 2 at the last paragraph at about Line 48, where it says, "To qualify as an entanglement mechanism, the following test must be passed." Do you see that
> A: I see it.
>
> Q: It says, "A nonwoven web sample of the type being run is pressed against the outer surface of the core. The web sample is then lifted off of the core. If the web exhibits any noticeably mechanical peeling (i.e., a tendency to mechanically stick to the core) while it is being lifted off, the surface feature

---

[3]The Plaintiff's Rule 30(b)(6) deposition, as well as Mr. Mintz's individual deposition, discussed below, were taken after the expiration of the discovery deadline, by consent of the parties.

>           causing the peeling qualifies as an entanglement mechanism." Do you see
>           that
> A:        I see it.
>
> Q:        Has Caraustar ever conducted such a test on any North Georgia Converting
>           winding core?
> A:        No.

On May 24, 2006, the Plaintiff deposed Mr. Mintz in his individual capacity. Taking the facts in the light most favorable to the Plaintiff, Mr. Mintz admitted that the Defendant was not only selling the allegedly infringing knobby winding core but was, in fact, using that core to wind fabric for its own purposes.

On June 23, 2006, after the Defendant refused to consent to the filing of an Amended Complaint, the Plaintiff filed a Motion to Amend its Complaint in order to add a claim for direct infringement.

The same day (June 23, 2006), the Plaintiff also filed its Motion to Extend the dispositive motions deadline, then set for June 30, 2006, until sometime after the Court had resolved the Motion to Amend. The Plaintiff stipulated, however, and the Defendant did not dispute, that a corresponding extension of the discovery period was unnecessary because discovery was complete, including on the issue of direct infringement. See Plaintiff's "Memorandum in Support of Motion to Amend" at 6 (document #45) ("Additional discovery is not necessary.")

On June 30, 2006, then still the dispositive motions deadline, the Defendant filed its "Motion for Summary Judgment" (document #47), which concerning the issue of infringement presents a single issue: whether its accused winding core has an "entanglement mechanism" within the mandatory definition and test stated in the patent.

On July 17, 2006, the Plaintiff filed its "Memorandum in Opposition" to the Defendant's

Motion for Summary Judgment. With its Motion, the Plaintiff also served the "Declaration of Robert Pender," dated July 17, 2006, despite the fact that Mr. Pender had never been mentioned by the Plaintiff at any earlier time, much less identified as a person with knowledge about this matter in the Plaintiff's Rule 26(a)(1) disclosures or identified as a potential witness (along with the results of his test, discussed below) in the Plaintiff's responses to the Defendant's written discovery requests. Far from being someone the Plaintiff could have reasonably overlooked initially, Mr. Pender states that he is a twenty-seven-year employee of the Plaintiff and is presently its Vice President of Sales and Marketing.

Contrary to Mr. Rollins' May 16, 2006 30(b)(6) testimony that the Plaintiff had performed no tests on or with the accused core, Mr. Pender contends that on an unstated date (which impliedly was after Mr. Rollins' 30(b)(6) deposition), he performed the entanglement mechanism test with a sample "knobby core" that the Plaintiff obtained from "LINQ," another of the Defendant's customers. Mr. Pender then purports to offer testimony that the core that the Defendant sold to LINQ <u>does</u> meet the entanglement mechanism test prescribed in the patent, that is, that fabric does resist being pulled away from the core.

Mr. Pender also declares that the sample "knobby" winding core produced by the Defendant earlier in discovery, which apparently does not offer resistance when fabric is pulled away, was not "representative" of the cores that the Defendant actually sold to its customers. The Plaintiff never filed, however, a motion to compel or for sanctions related to or otherwise complained of the Defendant's belatedly-alleged failure to produce a representative sample of the accused product. Moreover, it is undisputed that the Plaintiff acquired the LINQ core in late <u>2005</u> when it took the company's Rule 30(b)(6) deposition and, accordingly, the Plaintiff had ample time to perform tests

on that core prior to its Rule 30(b)(6) deposition and the expiration of the discovery period.

On July 25, 2006, after the Plaintiff's Motions to Amend and to Extend had been fully briefed, the Court <u>granted</u> the Plaintiff leave to file its Amended Complaint and <u>extended</u> the dispositive motions deadline to October 2, 2006, that is, an extension of the Plaintiff's time to file its Motion for Summary Judgment and for the Defendant to supplement its previously filed Motion for Summary Judgment.

On October 2, 2006, the Plaintiff filed its Motion for Summary Judgment, which concerning the dispositive issue of whether the accused product meets the prescribed definition and test for an entanglement mechanism rests almost exclusively on Mr. Pender's Declaration.

Although the Defendant has not filed a formal Motion to Strike Mr. Pender's Declaration, in its subsequent briefs (reply, surreply, and two supplementals brief in support of its Motion, and its brief opposing the Plaintiff's Motion), it has maintained that the Declaration should be excluded and has made detailed factual and legal arguments in support of that position.

Approximately one week before the Defendant's reply brief was due, the Plaintiff offered the Defendant the opportunity to depose Mr. Pender in exchange for the Defendant consenting to the Court's consideration of his Declaration.    For the reasons stated below, the Court concludes that the Defendant reasonably declined the Plaintiff's offer, and, moreover, will <u>strike</u> Mr. Pender's Declaration.

## II. <u>DISCUSSION</u>

### A. <u>Exclusion of Declaration</u>

As the Defendant argues, Mr. Pender's Declaration must be stricken for two independent

reasons. First, it is well settled in the Fourth Circuit that as a general proposition, a party may not submit an affidavit or declaration at the summary judgment stage contradicting its earlier deposition testimony. See, e.g., Rohrbourgh v. Wyeth Labs., Inc., 916 F.2d 970, 975 (4th Cir. 1990) (party may not create material issue of fact by submitting affidavit inconsistent with prior deposition testimony); and Wiley v. United Parcel Service, Inc., 102 F. Supp.2d 643, 653 (M.D.N.C. 1999) (same).

This rule has been applied where the subject deposition was the Rule 30(b)(6) deposition of a corporate party. See Rainey v. American Forest and Paper Association, Inc., 26 F.Supp.2d 82, 95 (D. D.C. 1998). In Rainey, the district court refused to consider an affidavit (authored by a person who had not testified on behalf of the plaintiff at the Rule 30(b)(6) deposition, and that contained information not disclosed at the deposition) submitted in opposition to the plaintiff's summary judgment motion, because it stated "legal and factual positions that var[ied] materially with those taken by the corporate representatives" in the defendant's Rule 30(b)(6) deposition. 26 F.Supp.2d at 95. Because the defendant made no showing that the affidavit's particular allegations were reasonably unavailable at the time of the Rule 30(b)(6) depositions, the court excluded the affidavit from consideration at the summary judgment stage, noting that "Rule 30(b)(6) requires such relief." Rainey, 26 F.Supp.2d at 95. Accord Wilson v. Lakner, 228 F.R.D. 524, 530 (D.Md. 2005) ("depending on the nature and extent of the obfuscation, the testimony given by the non-responsive deponent (e.g. 'I don't know') may be deemed binding on the corporation so as to prohibit it from offering contrary evidence at trial"), citing Rainey, 26 F. Supp. 2d 94-95; and United States v. J.M. Taylor, 166 F.R.D. 356, 362 (M.D. N.C. 1996) (if a party states it has no knowledge or position as to a set of alleged facts or area of inquiry at a Rule 30(b)(6) deposition, it cannot argue for a contrary

12

position at trial).

Applying these principles, the Court will strike Mr. Pender's Declaration, which is offered for the sole purpose of retracting its May 16, 2006 Rule 30 (b)(6) admission that it had performed no tests on the accused product, specifically, that it had not performed the entanglement mechanism test, and, accordingly, that it had no direct evidence to offer on the question of whether the accused product satisfied the test. This result is clearly mandated where the Plaintiff had been on notice since mid-December 2005 that non-party witnesses (Mr. Vyas and Mr. Patel) had testified that the accused core did not meet the test, and the Defendant had stated in a timely written discovery response served February 27, 2006 that it was basing its theory of non-infringement, at least in large part, on the fact that its knobby winding core did not meet the requirements of the test. In other words, where the Plaintiff has made no showing why it could not have performed the test prior to its Rule 30(b)(6) deposition, and particularly where it had been on notice for at least three months that the question of whether the accused core "passed or failed" the entanglement mechanism test was a central issue in this case (if not the central issue), it could not first take the position that it had no information on that subject and then later, after the close of discovery and the filing of the Defendant's dispositive motion, completely reverse itself. Accord Lakner, 228 F.R.D. at 530; Rainey, 26 F. Supp. 2d 94-95; and J.M. Taylor, 166 F.R.D. at 362.

Even assuming arguendo that Mr. Pender's Declaration did not contradict the Plaintiff's earlier Rule 30(b)(6) testimony, it still must be stricken because of the Plaintiff's failure to identify Mr. Pender and produce the results of his test in accordance with the Rules governing discovery.

Concerning a party's failure to timely produce otherwise discoverable information, Rule 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, <u>unless such failure is harmless</u>, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

Fed. R. Civ. P. 37(c)(1) (emphasis added). <u>Accord</u> <u>Poulis-Minott v. Smith</u>, 388 F.3d 354, 358 (1st Cir. 2004) (applying Rule 37(c)(1) to exclude previously-undisclosed evidence offered at summary judgment stage); <u>and</u> <u>Cambridge Electronics Corp. v. MGA Electronics, Inc.</u> 227 F.R.D. 313, 323-34 (C.D. Calif. 2004) (plaintiff could not rely on affidavit to raise triable issue of fact at summary judgment stage where neither affiant nor subject matter of affidavit had ever been produced to defendant).

> Rule 26(a)(1) provides for initial disclosures, in which:
>
> a party must, without awaiting a discovery request, provide to other parties: the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses, unless solely for impeachment, identifying the subjects of the information....

Fed. R. Civ. P. 26(a)(1)(A). The exclusion of evidence under Rule 37(c)(1) for failure to make a disclosure required by Rule 26(a) is "self-executing" and "automatic." 1993 Amendments to Advisory Committee Notes to Fed. R. Civ. P. 37(c).

As discussed above, the Plaintiff has offered no explanation, much less a persuasive justification, for its failure to timely identify Mr. Pender or to timely perform and produce the results of the entangling mechanism test, which clearly was information that the Plaintiff was required to disclose under Rule 26(a) and/or provide to the Defendant in a timely supplementation under Rule 26(e). Moreover, the failure to properly produce this information was neither "harmless," nor able to be rectified by offering the Defendant an "eleventh hour" opportunity to depose Mr. Pender.

As previously noted, the discovery deadline in this case was February 28, 2006, and the Plaintiff represented to the Court in late June, concerning its Motion to Amend, that discovery was then complete. In other words, the Plaintiff's failure to identify Mr. Pender and his testimony while discovery was ongoing not only lulled the Defendant into believing that the Plaintiff intended to offer no evidence on that topic, but also deprived the Defendant of an opportunity to conduct discovery and/or retain an expert in response to that evidence. Rather, the Defendant properly noticed and took the Plaintiff's Rule 30(b)(6) deposition, including on the topic of "all tests, experiments and/or studies conducted by Caraustar Industries, Inc. involving North Georgia Converting's winding cores," reasonably relied on the Plaintiff's testimony that it had done no such tests, and prepared its summary judgment motion accordingly.

In short, where the Plaintiff's failure to disclose or produce Mr. Pender's identity, testimony, and the results of his test in a timely fashion violated both the Rules of Civil Procedure and the Pretrial Order and Case Management Plan – and essentially deprived the Defendant of any meaningful opportunity to conduct responsive discovery – the Plaintiff's failure to disclose or make production was not harmless. Accordingly, Mr. Pender's Declaration must and will be <u>stricken</u> pursuant to Rule 37(c)(1) as well.

## B. <u>Defendant's Motion for Summary Judgment</u>

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and. . . the moving party is entitled to a judgment as a matter of law." <u>See also</u> <u>Charbonnages de France v. Smith</u>, 597 F.2d 406 (4th Cir. 1979). Once the movant has met its

burden, the non-moving party must come forward with specific facts demonstrating a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. Id. at 249-50.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. Id. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 1083 (4th Cir. 1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted).

As amended, the Complaint alleges that the Defendant infringed its patent directly by winding fabric on the accused core, and indirectly, either by inducing and/or contributing to infringement by selling the accused cores to customers who use them to wind fabric. In its "Memorandum and Opposition," however, the Plaintiff states that it does not oppose the Defendant's Motion for Summary Judgment as to its contribution claim, and, accordingly, the Defendant's Motion will be granted as to that claim. See document #51 at 22, n.4.

Concerning the Plaintiff's remaining claims, it is well settled that indirect infringement can only arise in the presence of direct infringement. Dynacore Holdings Corporation v. U.S. Philips Corporation, 363 F.3d 1263, 1272 (Fed. Cir. 2004). Accordingly, in order to survive summary judgment as to either of its remaining claims, the Plaintiff must establish the existence of a material

16

issue of fact, taking the facts in the light most favorable to the Plaintiff, as to whether the Defendant's accused winding core directly infringes the patent. Id.

Determination of direct patent infringement requires a two-step analysis. The court must first interpret the claims to determine their scope and meaning, and then it must compare the properly construed claims to the allegedly infringing device. Id., 363 F.3d at 1273.

In this case, there is no dispute as to the scope and meaning of the patent claims.[4] To establish the second element of direct infringement, the patentee must show that the accused device meets each and every claim limitation, either literally or under the doctrine of equivalents. Dynacore, 363 F.3d at 1273.[5] If the accused device omits a single claim element or limitation, this is sufficient to negate infringement of the claim. Laitram Corp. v. Rexnord, Inc., 939 F.2d 1533, 1535 (Fed. Cir. 1991). Moreover, because the Plaintiff has the burden of proof on this issue, if it fails to establish infringement, the Defendant is entitled to summary judgment on the issue of non-infringement. Id. and Johnston v. IVAC Corporation, 885 F.2d 1574, 1578 (Fed. Cir. 1989) (accused infringer entitled to summary judgment on non-infringement where plaintiff patentee failed to put forth evidence to support a finding that a limitation of the asserted claim was met by accused device).

It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude. Phillips v. AWH Corporation, 415 F.3d 1303, 1312

---

[4]Chambers' staff has spoken telephonically with the parties' respective counsel who confirmed that claim construction is not at issue.

[5]The Plaintiff argues that the accused device literally infringes its patent, but does not contend that the device infringes under the doctrine of equivalents, which generally may provide a basis for finding infringement even though there is no literal infringement, where the accused device performs substantially the same function in substantially the same way to achieve substantially the same result. Lockheed Martin Corp. v. Space Systems Loral, Inc., 324 F.3d 1308 (Fed Cir 2003), citing Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 40 (1997).

(Fed. Cir. 2005). A patent must include one or more claims that particularly point out and distinctly claim the subject matter which the applicant regards as his invention. 35 U.S.C. § 112. Because the patentee is required to define precisely what his invention is, it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms. Phillips, 415 F.3d at 1312. The patent's specification may reveal a special definition given to a claim term by the patentee, and in such cases, the inventor's lexicography governs. Id. at 1316. The inventor's intention, as expressed in the specification, is regarded as dispositive. Id.

As discussed in Section I, and as the parties agree, the patent includes three independent claims – claims 1, 11 and 22 – each of which requires that the accused device meet a special definition for the term "entanglement mechanism," that is, a test that the device "must" pass:

> a nonwoven web sample of the type being wound is pressed against the outer surface of the core. The web sample is then lifted off of the core. If the web exhibits any noticeable mechanical peeling (i.e., a tendency to mechanically stick to the core) while it is being lifted off, the surface feature causing the peeling qualifies as an entanglement mechanism. If the web exhibits no such peeling, but instead lifts off of the core without any resistance, the core surface does not embody an entanglement mechanism.

Applying the above-noted legal principles to the facts in this case, that is, comparing the patent's claims to the accused device, and taking the evidence in the light most favorable to the Plaintiff, it has failed to establish an issue of material fact as to whether the accused winding core contains an "entanglement mechanism" within the patent's definition of that term.

The only properly admissible evidence that Plaintiff has submitted on this topic is the deposition testimony, quoted above, of Mssrs. Vyas, Patel, Ryland, and Evans. As discussed above, however, neither Mr. Evans nor Mr. Ryland was ever questioned or otherwise testified concerning the accused core's alleged "entanglement mechanism," even as that term might be defined in

18

common parlance, much less the patent's special definition of that term. Mr. Ryland acknowledged only that the accused core's surface was "nonsmooth" and covered with "bumps." Mr. Evan's testimony was less helpful, agreeing that the accused device had a "rough surface," but disputing that the same surfaces were "prickly" or covered with "raised surfaces." Although Mr. Vyas and Mr. Patel were questioned about the patent's special definition and test for an entanglement mechanism, both responded in the negative, testifying that the test fabric came off of the accused core without sticking or resistance.

In other words, not only has the Plaintiff failed to carry its burden on this dispositive point, but the only admissible evidence concerning whether the accused winding core meets the patent's definition supports the Defendant's claim of non-infringement. Having concluded that the Plaintiff has failed to establish direct infringement, the Defendant's Motion for Summary Judgment must be granted as to the Plaintiff's claims for direct and indirect patent infringement, and as to the Defendant's claim for a declaratory judgment of non-infringement. The Defendant's alternative claims, for declarations of invalidity or unenforceability, will be denied as moot.

### C. Plaintiff's Motion for Summary Judgment

For the same reasons that the Defendant's Motion for Summary Judgment will be granted, the Plaintiff's Motion for Summary Judgment must be denied.

### III. ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Declaration of Robert Pender," docketed as Exhibit 2 to Plaintiff's "Memorandum in Opposition" (document #51), is **STRICKEN**.

2. The Plaintiff's "Motion for Summary Judgment" (document #64) is **DENIED**.

3. The Defendant's "Motion for Summary Judgment" (document #47) is **GRANTED,** that is, the Complaint is **DISMISSED WITH PREJUDICE** and the Defendant is **GRANTED** a **DECLARATORY JUDGMENT** that its accused winding core does not infringe the subject patent.

4. The remaining portion of the Defendant's Counterclaim seeking, in the alternative, a Declaratory Judgment that the Plaintiff's patent is unenforceable and/or invalid is **DENIED AS MOOT**.

5. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED, ADJUDGED AND DECREED**.

Signed: December 19, 2006

_Carl Horn, III_

Carl Horn, III
United States Magistrate Judge